UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:09-CR-272 |
| v. | (Judge Kosik) |
| MICHAEL T. CONAHAN, and MARK A. CIAVARELLA, JR., | |
| Defendants. | |

FILED
SCRANTON
JUL 0 6 2010
PER _____
DEPUTY CLERK

## MEMORANDUM AND ORDER

We have two defense motions that are somewhat related as to subject matter. First is the Motion to Dismiss the Indictment based upon Outrageous Government Misconduct (Docs. 49 & 52), and second, the Motion to Suppress Evidence Obtained from Recorded Conversations of the Defendants and Any Fruits Thereof (Docs. 61 & 73).

### BACKGROUND

Because we write for the parties, much of the history of the case need not be repeated. It is pertinent for the purposes of the instant motions to note that in the year 2000, Luzerne County officials were evaluating the need for a new juvenile detention facility. There were discussions by individuals including both defendant judges, Robert Powell, an attorney for the Luzerne County Planning Commission, and Robert Mericle, owner of Mericle Construction Company. In 2001, shortly after private construction was agreed upon, Powell understood that the defendant judges needed to be compensated for their efforts concerning the construction and use of the facilities to be constructed. The contractor Mericle agreed to make a series of payments to the judges through Powell. The payments resulted from an understanding between the parties. Regardless of the method of payment, there were efforts to disguise what was being accomplished.

1

At one point the defendant judges became aware that their activities were under federal investigation when persons known to them received grand jury subpoenas. This prompted retention of counsel leading to a mutual defense agreement. The defendant judges characterize the joint defense agreement as "an extension of the attorney-client privilege and protect[ing] communications between an individual and an attorney for another when the communications are part of an on-going and joint effort to set up a common defense strategy." (Doc. 73, ¶ 5.)[1]

Before any charges were actually filed in 2009, the Government says Powell indicated through counsel that he wished to meet with the investigators, cooperate fully, and enter into a plea agreement. Powell agreed to discuss the defendant judges' monetary demands and to record conversations with the judges.[2]

Apparently made aware of the joint defense agreement, the Government states that before receiving any recorded conversations, it directed that the proposed procedure be reviewed by a district ethics officer who would appoint a taint team, wholly unrelated to the criminal investigation, to review all conversations to be recorded and to redact any revelations of trial strategy or conversations the defendant judges may have had with counsel. Only after such redactions were the tapes available to the investigators. The original tapes have been sealed.

Powell met with the judges six times between July 21, and September 4, 2008. Each meeting was recorded. Defendants have been provided with unredacted copies of the recordings of each meeting. Excerpts of some recordings are included in the Government's brief opposing

---

[1] To our knowledge, the agreement has never been provided to the court or the government.
[2] Initially, the defendant judges pled guilty to two counts of a criminal information pursuant to a plea agreement in January 2009. (No. 09-cr-28, Docs. 3 & 5.) After the guilty pleas were withdrawn, the present charges were initiated with an Indictment on September 9, 2009. (Doc. 1.)

2

all defense motions.[3] (Doc. 113.) We assume these excerpts represent the extent of the Government's interest in disclosure.

## DISCUSSION

### I.

In their Motions to Dismiss, the defense claims that using Powell as an undercover informant without first withdrawing from the joint defense agreement as required by its terms (to which the court is not privy) constitutes a substantive due process violation warranting dismissal of the Indictment because it represents a deliberate intrusion on the attorney-client privilege. Both authorities cited by the defense, United States v. Hofficker, 530 F.3d 137 (3d Cir. 2008); United States v. Voigt, 89 F.3d 1050 (3d Cir. 1996), found the government utilizing defense counsel as an informant. It is unclear in our case if the defense means that Powell's failure to withdraw from the joint defense agreement was in his role as defendant or as an attorney. It is unclear because the defense makes a point that ". . . Powell and his firm had represented Defendant previously . . ." in a land development project. Of course, ". . . a past attorney-client relationship does not establish that an attorney-client relationship continues until a later time." 530 F.3d at 155.

The above authorities note that the claim of outrageous government conduct calls for judicial restraint, and a dismissal is rarely granted by the courts. When granted, one of the crucial elements the defense must initially establish is actual and substantial prejudice. The defense claims here that the element is established because the Government discovered and disclosed defense strategy. No particular defense strategy is noted. A review of the pertinent transcripts included with the Government's brief established that the three defendants discussed a

---

[3] The court has been provided with unredacted compact discs and transcripts. (See Doc. 113 at 105 n.19.) However, the court only addresses that which appears to be the basis for the defense motions.

3

strategy of outright subornation of perjury, perjury, and obstruction of justice; all directed at a continuation or concealment of their alleged offenses. The Government is correct in pointing out that there is no constitutionally protected right to such conversations in any circumstance. Nor is it a protected strategy to use the aforesaid means to attack the credibility of a witness who is acting as an intermediary in the delivery of what the Government characterizes as "kickbacks."

## II.

With respect to the second motion, i.e., to suppress evidence obtained in violation of the attorney-client privilege and/or the work-product doctrine, we believe the reasoning applicable to the earlier motion is equally applicable here. In fact, there is another exception to the attorney-client privilege, which is often referred to as the crime-fraud exception.

The applicability of the crime-fraud exception to trump the claim of attorney-client privilege relating to defense strategy is discussed in many cases and reviews on the subject. It may be best summarized in United States v. Martin, 278 F.3d 988, 1001 (9th Cir. 2002):

> The attorney-client privilege does not extend to communications made to a lawyer to further a criminal purpose. When a lawyer's advice is sought to further a crime or fraud, those communications are not privileged. United States v. Zolin, 491 U.S. 554, 563 (1989). The crime-fraud exception to the attorney-client privilege "assure[s] that the 'seal of secrecy' between lawyer and client does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime." Id. (citations and internal quotation marks omitted.)
> 
> The government bears the burden of providing that the attorney-client privilege does not apply because of the crime-fraud exception. United States v. Laurins, 857 F.2d 529, 540 (9th Cir. 1988). Demonstrating that the communications with the lawyer were "'in furtherance of an intended or present illegality and that there is some relationship between the communications and the illegality'" makes a prima facie case. United States v. Bauer, 132 F.3d 504, 509 (9th Cir. 1997) (quoting Chen, 99 F.3d at 1503). It is not enough for the government to have a "sneaking suspicion the client was engaging in or intending to engage in a crime or fraud when it consulted the attorney." In re Grand Jury Proceedings, 87 F.3d 377, 381 (9th Cir. 1996). The exception applies only when there is "reasonable cause to believe that the

attorney's services were utilized in furtherance of the ongoing unlawful scheme." Id. (citation and internal quotation marks omitted).[4]

As discussed above, in this instance, the crime-fraud exception defeats the defendant judges' claim of attorney-client privilege. For the foregoing reasons, the Motions (Docs. 49, 52, 61 & 73) are DENIED. SO ORDERED.

_____
Edwin M. Kosik
United States District Judge

Dated: July 6, 2010

---

[4] See also 3 Wharton Crim. Evid. § 11:27, at 97–98 (15th ed. 1999).

5