1

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA,    )
                             )
                             )
          v.                 )    09-CR-272
                             )
                             )
MICHAEL T. CONAHAN,          )


          BEFORE:   HONORABLE EDWIN M. KOSIK
                    United States District Judge
                    for the Middle District of Pennsylvania

                    Sentencing

                    Friday, September 23, 2011
                    Scranton, Pennsylvania


A P P E A R A N C E S:

For The Government:       GORDON A. ZUBROD, ESQ.
                          Assistant United States Attorney
                          228 Walnut Street
                          Harrisburg, Pennsylvania  17108

     -AND-                WILLIAM S. HOUSER, ESQ.
                          Assistant United States Attorney
                          Room 309, Federal Building
                          Scranton, Pennsylvania  18503

For The Defendant:        ARTHUR T. DONATO, JR., ESQ.
                          216 West Front Street
                          Second Floor
                          Media, Pennsylvania  19063

     -AND-                PHILIP GELSO, ESQ.
                          63 Pierce Street
                          Kingston, Pennsylvania  18704


          KRISTIN L. YEAGER, RMR,CRR - COMPUTER TRANSCRIPT

1    THE COURT:  Please sit down.

2    MR. HOUSER: Good morning, Your Honor. This is the matter of

3  United States v. Michael Conahan, bearing docket number

4  3:CR-09-272.

5    Mr. Conahan is present in Court with his counsel. He

6  previously appeared before the Court and entered a guilty plea

7  to a charge of racketeering conspiracy. At that time, Your

8  Honor ordered a Pre-sentence Investigation Report. That report

9  has been prepared and has been reviewed by the parties. There

10  are no outstanding objections to the Pre-sentence Investigation

11  Report and the Government would move for sentencing at this

12  time.

13    THE COURT: Okay, let the record reflect that I have a copy

14  of the Pre-sentence Report, the Defendant's Sentencing

15  Memorandum and the Government's Sentencing Memorandum or reply

16  to the Defendant's Sentencing Memorandum, and I ask the

17  Defendant, did you get a copy of the Pre-sentence Report?

18    THE DEFENDANT: I did, Your Honor.

19    THE COURT: Did you have a chance to discuss it with your

20  counsel?

21    THE DEFENDANT: I did.

22    THE COURT: I'll be very happy to hear from the Defendant,

23  his lawyers and Government's counsel.

24    MR. GELSO: Thank you, Your Honor. Your Honor, may I remain

25  seated?

1    THE COURT: Whatever makes you comfortable.

2    MR. GELSO: Your Honor, this weekend, my eight-year-old son

3 reminded me today was the first day of Fall, and with that,

4 Fall has been described as a mosaic of a number of seasons, and

5 I think that analogy is appropriate for what we're here to do

6 today, which is that, under Section 3553(a), we are required to

7 look at the tiles of a person's life to determine the

8 sufficient sentence that is not greater than necessary.

9    When you look at the tiles of Mike Conahan's life, a number

10 of things become apparent. Those tiles of mitigation, Your

11 Honor, have been discussed extensively in our Sentencing

12 Memorandum, I don't think we need to rehash all that material,

13 but there are certain things I would like to highlight, if the

14 Court may.

15    Your Honor, the razor's edge walked by Mike -- and I'm

16 going to refer to him as Mike because that's how I refer to him

17 -- the razor's edge walked by Mike is an important factor for

18 this Court to consider. But I think we have to start back in

19 February of 2009. Back then, Mike Conahan and Mark Ciavarella

20 entered a plea, as everyone is aware, to Honest services mail

21 fraud, as well as Tax fraud conspiracy. And at that time, the

22 parties agreed that an 87-month sentence was appropriate, was a

23 sufficient sentence that wasn't greater than necessary in this

24 case.

25    This criminal conduct hasn't changed, Your Honor, but at

1 the time, this Honorable Court rejected that plea, and partly

2 because Mike Conahan refused to accept responsibility with the

3 Probation Office and because of Ciavarella's public antics.

4      Your Honor, the Mike Conahan who is before you today is

5 different from the Mike Conahan who was before you back in

6 2009. That's why we think the process of getting from there to

7 here is an important one to be considered.

8      Your Honor, we reviewed closely your opinions back then in

9 2009, and Mr. Donato suggested, at that point, that Mr. Conahan

10 see a psychologist, because something just didn't make sense.

11 It didn't make sense how a guy who did so much good in his life

12 did these things. It didn't make sense how a guy couldn't see

13 the consequences of his actions or accept responsibility, as

14 Your Honor noted in the opinion.

15      Your Honor, Mike agreed to meet with that psychologist,

16 without hesitation or reservation, and he agreed, back in late

17 2009, to do that. In order to answer those questions, Your

18 Honor, Mike was forced to look at his life and to begin to

19 understand himself in ways that he has never done before. So

20 the process began.

21      Mike met with Dr. Atkins in December of '09. He went

22 through a battery of psychological testing and talked to Atkins

23 for hours on end. At some of those meetings, Mike met with

24 Atkins alone, sometimes his wife Barbie, who is here today, met

25 with them, or Mr. Donato or I met with them together. With his

1 permission, Dr. Atkins spoke to his wife privately, spoke to

2 his siblings, reviewed letters from friends and family alike.

3 And after all this, we met, and Dr. Atkins discussed what he

4 found. And through the process, what became apparent was that

5 Mike had to confront demons that were revealed in the

6 psychological testing, that was confirmed in the conversations

7 with his siblings, and locked away by years of repression.

8     We found out that this outward persona of confidence

9 really, despite this outward persona of confidence, Mike

10 suffered from insidious feelings of inadequacy and insecurity.

11 He comes from a family with a patriarch who drove his children

12 to success and used money as a barometer of that success. He

13 was taught the ends justified the means. And due to these deep

14 insecurities and inadequacies, he used repression and alcohol

15 as a defense mechanism to keep those insecurities in check and

16 help him ignore the consequences of his actions.

17     Your Honor, these factors, coupled with other

18 circumstances, created what I would call a perfect storm that

19 allowed this criminal conduct to ensue, that allowed Michael to

20 engage in this criminal conduct. Your Honor, these factors

21 excuse nothing, but they explain a great deal. They explain why

22 it has been reported that there are many faces of Michael

23 Conahan, but, Your Honor, there aren't many faces of Michael

24 Conahan, there are only tiles in that mosaic. Deep inside that

25 person was a person who said yes to the first meeting, a person

1  who decided to engage in that process, and those other tiles
2  are important for this Court's consideration.

3      There was the person who was once the child who stayed the
4  bath water for his younger brother, who was this little
5  insecure boy who sat in his dining room while his siblings, who
6  are here today, Your Honor, and their parents discussed these
7  things going on, where he was unable to do it because of fear
8  or insecurity but desperately desired to do so.

9      Your Honor, there was that boy who laid in bed for a week
10  paralyzed before it was believed that he had anything wrong
11  with him, and they took him to a doctor and found out that he
12  had Guillain-Barre. A teenager that was beaten mercilessly by
13  his father for simply forgetting to stoke the family furnace at
14  the funeral home. There was a son who took care of his mother
15  after his father died, who would meet with her every Saturday
16  and discuss the week's events, and the mail that came in, junk
17  mail or whatever, but he never made her feel bad. Everything
18  was placed in a bowl on the dining room table, and there was
19  that mourning son, who, when she passed away, only asked to
20  keep the bowl poignantly.

21      The surrogate father, Your Honor, who took care of his
22  nephews and nieces who are also here today to support Michael
23  as if they were his very own. Your Honor, there was the husband
24  who took care of his wife who is also here through two bouts of
25  cancer. There was the lawyer who helped countless people pro

1  bono. There was the magistrate who took the time to teach the

2  laymen how the process was going on around them. The volunteer

3  who was only known to the participating special needs children

4  as the guy with the gummy bears in his pocket or the man who

5  lined the baseball field before their game.

6      Your Honor, there was the friend who was also there to

7  help, in any way possible, through donation, a helping hand or

8  a shoulder to lean on. There was a judge who cared. Started the

9  Drug Court that made a difference in so many people's lives.

10 Your Honor, personally, there was the President Judge who, when

11 my eight-year-old son was born eight years ago, who took the

12 time to buy him a gift on his birth.

13     Your Honor, these are just samples on the mosaic, on the

14 other tiles of the mosaic of Michael Conahan. This was this

15 person who agreed to meet with the psychologist, this person

16 who continued to say yes to facing his life-long demons. Your

17 Honor, through that process, Michael found the keys to open the

18 doors of rooms that were locked by years of repression. Your

19 Honor, this pathway walked by Michael is in stark contrast to

20 the road traveled by Ciavarella.

21     As Ciavarella continued to deny responsibility for his

22 actions and the disastrous consequences of the same, Michael

23 accepted it. As Ciavarella made public statements antagonizing

24 the juveniles and antagonizing the public who were hurt by his

25 criminal conduct, Michael remained quiet, with the hope that

1   his silence would somehow begin the healing process. Your

2   Honor, as Ciavarella challenged the Government, the Court and

3   the public concerning his criminal conduct, Michael challenged

4   himself to understand, with the help of Dr. Atkins, why he

5   committed these crimes. He also met with the Government,

6   forfeited his pension and offered to forfeit any remaining

7   asset that he could to pay restitution.

8        Your Honor, this process of meeting with Dr. Atkins and

9   exploring these issues took time. It was a process that made

10  Michael face many demons from his past, in order to open the

11  locked doors by years of repression.

12       Your Honor, this process would have less significance, if

13  it wasn't this case, in which the public, the Judiciary, the

14  legal profession, and most importantly, the juveniles who were

15  harmed by this criminal conduct, but all these groups were

16  affected by his criminal conduct, Your Honor, we all know that.

17  Through this process, Your Honor, Mike is now able to speak and

18  address those groups personally here today, without pride or

19  arrogance, but with sincerity and humility.

20       Your Honor, with the Court's indulgence, I would ask Mike

21  to make a few remarks.

22       THE COURT: I'll be happy to hear from him.

23       THE DEFENDANT: Thank you, Your Honor. Good morning. Your

24  Honor, this has been a long road for me. It has been difficult,

25  embarrassing, damaged my reputation beyond repair. I've lost

1  everything that I worked for my entire life, and I'm about to
2  go to prison.

3      Your Honor, I deserve these consequences because of what
4  I've done. First, please allow me to apologize to the children
5  and the families of the children that appeared in Juvenile
6  Court in Luzerne County. You are the vulnerable people of our
7  society and are entitled to have decisions based upon what is
8  in your best interests. I let you down the most.

9      My actions undermined your faith in the system and
10 contributed to the great difficulty in your lives. I was the
11 President Judge, I owed you better. I'm grateful that the
12 Supreme Court overturned your findings of delinquency and
13 expunged your records. I am sorry you were victimized.

14     I apologize to the staff and the Probation Department of
15 the Juvenile Court. I was the President Judge and I should have
16 let you do better things for those juveniles. I let you down.
17 You deserved better from me. To all of those people who lost
18 faith in the juvenile justice system, I ask that you please
19 keep in mind the system was not corrupt, I was corrupt. The
20 system has integrity, I did not perform my duties the way I
21 should have, and I do not have integrity.

22     I apologize to the citizens of Luzerne County because your
23 faith in government has been shaken, as a result of the dark
24 cloud I placed over all of us. I let you down personally and
25 professionally. I hope that both the prosecutions of public

officials and public officials like me accepting responsibility and admitting their criminal actions will restore your faith in government.

Your Honor, Luzerne County is a wonderful place to live, work and raise a family. The county and its government were not corrupt, I was corrupt. I also apologize to the legal community and the Judiciary. I've tarnished the reputation and trust that people have placed in lawyers and in the Judiciary. I think I did some good as a judge, however, I lost my way, and any good I have done over the years will forever be overshadowed by my criminal acts.

The public has the right to expect that lawyers act with integrity at all times. As a lawyer, I failed. The public has a right to expect that the Judiciary is built upon the foundation of upholding truth and honesty. As a judge, I failed. The judicial system was not bad or corrupt, Your Honor, I was corrupt.

Your Honor, I lost my way and violated my oath and broke the law. Over the past two years, I've come to understand these facts. I worked long and hard to try and understand all the wrong that I've done and why I did it and to try and understand how I can atone for it. Throughout this process, my family and close friends never left my side.  They have given me the love and support I needed so that I could step back and examine my life and my conduct.

1    I have a lot of time to think about what I did. My failures

2    and this process helped me to look at myself, and I did not

3    like what I saw. I disappointed and hurt so many people. I

4    apologize to my family and friends for putting them through all

5    of this. I apologize to the public for putting them through all

6    of this.

7        I realize that mere words cannot change the pain that so

8    many people are feeling, but I hope it's a beginning, and I'm

9    sorry. What I did was wrong, what I did damaged a great many

10   people, and I hope that going forward, the citizens, the

11   public, and most importantly, the children of Luzerne County

12   can begin to heal and that their faith in the legal system, in

13   government and the Judiciary can be restored.

14       From my part, I will work the rest of my life to atone for

15   what I've done. Thank you.

16       THE COURT: Does the Government have anything?

17       MR. HOUSER: May it please the Court. The Government has

18   made no motions for downward departure or requests for downward

19   variances, on behalf of Mr. Conahan. The facts of the case are

20   well-known to the Court, so my remarks will be brief here this

21   morning.

22       The Government asks that Your Honor sentence Michael

23   Conahan to a prison sentence appropriate for the serious crime

24   he committed and for the relevant conduct for which he is

25   accountable. We make this request on behalf of everyone harmed

1 by his actions, including the citizens of Luzerne County and
2 the Commonwealth of Pennsylvania, juveniles and their families
3 who appeared in the Court of Common Pleas during the time that
4 the offense was ongoing, and victims of juvenile offenders whom
5 the system utterly failed.

6     This request for a sentence that appropriately reflects the
7 seriousness of the crime is consistent with the United States
8 Sentencing Commission advisory guidelines and with the
9 sentencing factors Your Honor must consider under Title 18
10 United States Code Section 3553(a). As required by law, Your
11 Honor has reviewed the Pre-sentence Investigation Report that
12 lays out the undisputed facts of the case. The Court has
13 calculated Mr. Conahan's advisory guideline sentencing range.
14 That sentencing range, although advisory, suggests a very
15 substantial sentence.

16     In addition to considering the advisory guidelines, the law
17 requires that you exercise your sentencing discretion by
18 considering the relevant factors under Title 18 United States
19 Code Section 3553(a). The law makes clear that these statutory
20 factors control, regardless of whether the sentence they
21 dictate varies from the sentence calculated under the advisory
22 guidelines.

23     Consideration of the factors listed under Section 3553 also
24 weighs in favor of imposition of a significant prison sentence.
25 Your Honor must consider the nature and circumstances of the

1 offense. Mr. Conahan held one of the highest, most powerful and

2 honored positions in our society, that of President Judge. In

3 exchange for the power and prestige of his office, he owed a

4 duty to be fair and impartial and to act with no self-interest,

5 because the matters that came before him were matters of the

6 utmost importance to the community and to the lives and

7 fortunes of the parties who appeared before him.

8      Mr. Conahan abused his power to enrich himself and his

9 friend Mark Ciavarella, because so much trust and power was

10 placed in him, his abuse of power had terrible consequences.

11 As a result of the actions of Michael Conahan and Mark

12 Ciavarella and others who have been charged in this case, the

13 justice system in Pennsylvania was shaken to its very

14 foundation. Many, many juveniles and their families were

15 victimized.

16      The Supreme Court of Pennsylvania was compelled to vacate

17 thousands of juvenile adjudications. Countless hours and

18 resources were expended by members of all three branches of the

19 Pennsylvania Government and by the Interbranch Commission on

20 Juvenile Justice to study what Conahan and Ciavarella did and

21 to recommend changes to the juvenile justice system to minimize

22 the chance that the system would fail in such a catastrophic

23 way in the future.

24      So in considering the nature and circumstances of the

25 offense, it's fair to say that the criminal conduct in this

1  case was of an extraordinarily serious nature.

2      Your Honor must consider the history and characteristics of

3  the Defendant. The Defense has highlighted a number of

4  considerations that weigh in Mr. Conahan's favor, including his

5  family ties and his acceptance of responsibility for his

6  actions. The Government concurs that, in contrast to Mark

7  Ciavarella, Mr. Conahan has, in fact, accepted responsibility.

8      Your Honor must consider the need for the sentence imposed

9  to reflect the seriousness of the offense, to promote respect

10  for the law, to provide just punishment for the offense and to

11  afford adequate deterrence to criminal conduct.

12      The serious offense committed by Mr. Conahan warrants a

13  serious prison sentence. To afford adequate deterrence to

14  others, the Government asks the Court to impose a prison

15  sentence that sends a clear message that when a person abuses

16  one of the highest and most trusted positions in our society

17  for criminal conduct, for personal gain, he must pay a very

18  dear price with many years of his life spent behind bars.

19      Another factor Your Honor must consider is the need for the

20  sentence imposed to avoid unwarranted sentencing disparities

21  among Defendants with similar records who have been found

22  guilty of similar conduct.

23      In this case, Mark Ciavarella was sentenced to 28 years in

24  prison. Based upon the law and upon the nature of the

25  jointly-undertaken activity, the Government asks that you also

1  sentence Michael Conahan to a lengthy prison sentence, which

2  nevertheless takes into account that fact that unlike Mr.

3  Ciavarella, Mr. Conahan did not put the community through the

4  expense and emotional distress of a trial.

5      In conclusion, the Government asks that you sentence Mr.

6  Conahan to a lengthy term in prison. It's our understanding

7  that he's agreeable to being remanded to prison today, and we

8  ask that he, in fact, be imprisoned immediately. Thank you,

9  Judge.

10      THE COURT: Do you wish to respond?

11      MR. GELSO: No, Your Honor.

12      THE COURT: As counsel for the Defendant pointed out in his

13  remarks and inferences on the consideration of the person who

14  is standing before this Court for sentencing, and in addition

15  to the legal factors that we have to take into account, we do

16  have to consider the person who is appearing before us for

17  judgment.

18      You indicated that the Defense took the time to have the

19  Defendant's character and any potential problems reviewed by a

20  psychologist. Various members of the family spoke to that

21  psychologist. Your Sentencing Memorandum alludes to some of the

22  statements of the family members to that psychologist, and most

23  striking to me, in reviewing your Sentencing Memorandum, are

24  statements -- most revealing to me and in contradiction to some

25  of the conclusions of the psychologist are statements made by

1 two sisters of Mr. Conahan, and it seems to coincide with some

2 of your statements concerning the influences in the Defendant's

3 life.

4     One sister, without naming her, told the psychologist,

5 "Michael was like his father, he sees a lot of gray." And

6 that's a very important word.

7     Another sister more succinctly said that he also sees a lot

8 of gray. She alluded to the fact that when her father was

9 Mayor, there was an occasion where he was charged with some

10 ethical violation, which he didn't consider an ethical

11 violation and couldn't understand why people considered it an

12 ethical violation, because he was awarding a contract to a

13 friend, because he thought that friend's work would benefit the

14 community. She said their father never understood this. He

15 couldn't see what the problem was.

16     "In some ways, I think Mike looked at the juvenile center

17 in the same way, in that everyone was going to benefit and that

18 no one was going to get hurt."

19     I don't exclude myself when I say that is one of the

20 greatest dangers of public office, particularly, if we serve in

21 that public office for a period of time. We conclude that

22 different standards seem to apply to us than to the average

23 person on the street. We see that day after day after day, and

24 it's not uncommon in this area.

25     When I was a child, those practices were accepted. A school

1  board member could have coal delivered to his home, even if it

2  was being paid for by the school board, people were aware of

3  that and they said, Well, he's not getting any salary, and in

4  those days, it was perfectly all right. It's the gray area, in

5  my mind, that led this Defendant to his fate today.

6      A lot has been said about this case, and there's no point

7  to extending it or my attempt to lecture a Defendant who sat in

8  a role similar to this one, and he knows what my job is, and I

9  suppose I'll have to do it.

10     I'll only add one personal comment, based entirely on my

11  sense and experience as a judge, and that is that all of the

12  Defendants associated with the mess that existed in Luzerne

13  County were part of a cabal. Regardless of the different

14  degrees of complicity assigned by the Government, I don't

15  consider this a failure or criticism of the Government,

16  because, as a prosecutor, they have a duty to make calls, in

17  order to establish a case that we concede and, therefore, they

18  have to evaluate and assess different degrees of culpability,

19  and they have done that in this case.

20     But overall, since conspiracy was a word used in these

21  prosecutions, that was part of the kabbala, and a lot of people

22  have suffered.

23     I've carefully reviewed the Defendant's Sentencing

24  Memorandum, which sets forth the arguments for departure from

25  the guidelines and/or a variance, and carefully, you have

1  addressed the 3553(a) factors, the Government has carefully

2  addressed the 3553(a) factors here, and there were many

3  letters, on behalf of the Defendant, that were taken into

4  account. But we have to conclude that there is no factor that

5  warrants a departure from the guidelines or a sentence outside

6  of the advisory guideline range.

7       So pursuant to the Sentencing Reform Act, it is the

8  Judgment of the Court that the Defendant is committed to the

9  custody of the Bureau of Prisons for a term of 210 months.

10      We find the Defendant has an ability to pay a fine, so it's

11  Ordered that he pay to the Clerk of Court the sum of $20,100,

12  consisting of a special assessment of $100 due immediately and

13  a fine of $20,000 payable to the Clerk and interest is waived.

14      Further, that the Defendant shall make restitution in the

15  amount of $874,167 payable to the Clerk for disbursement to the

16  Commonwealth of Pennsylvania, and the lump sum payment of

17  $200,000 shall be made within 30 days of the entry of this

18  judgment. Payment of interest is waived.

19      The term of imprisonment, the restitution and fine are

20  payable every three months in an amount after telephone

21  allowance equal to 50 percent of the funds deposited into the

22  Defendant's inmate trust fund account. In the event restitution

23  is not completed in full, upon his release, the Defendant shall

24  satisfy it in monthly installments of no less than $1,000 to

25  commence 30 days after his release.

1        Upon your release, you'll be placed on supervised release

2   for three years. Within 72 hours of that release from the

3   custody of the Bureau of Prisons, you'll have to report to the

4   Probation Office in the district to which you have been

5   released.

6        While on supervised release, you'll not commit another

7   Federal, State or local crime and shall not possess a dangerous

8   weapon. You'll comply with the standard conditions that have

9   been adopted by this Court, as well as the following

10  conditions:

11       You'll submit to one drug test within 15 days of commencing

12  supervision and at least two periodic drug tests thereafter for

13  use of a controlled substance. You will cooperate in the

14  collection of DNA samples, as directed by the Probation Office.

15  You'll not incur any new credit charges or open additional

16  lines of credit without the approval of the Probation Officer.

17  You'll provide the Probation Office with access to any

18  financial information, you must comply with all monies received

19  from income tax refunds, lottery winnings or any other source,

20  expected or unexpected as a financial gain, to the outstanding

21  Court-ordered financial obligation.

22       You have already agreed to impose no objection to the

23  United States transferring evidence or providing information

24  concerning you to other State and Federal agencies. You make no

25  objection to the entry of the Order under Federal Rule of

1  Criminal Procedure 16, authorizing transfer to the Internal

2  Revenue Service Examination Collection Division of documents of

3  third persons in possession of the Grand Jury.

4      You agreed to fully comply and cooperate with the Internal

5  Revenue Service by using your best effort to file all

6  delinquent or amended tax returns and pay any taxes. You've

7  also agreed to cooperate with the Internal Revenue Service by

8  furnishing them all the information pertaining to your

9  activities.

10     You've further agreed to pay all taxes, interest and

11  penalties due and owing to the United States or otherwise fully

12  comply with the tax laws. You will surrender your license to

13  practice law within 10 days of acceptance of this plea

14  agreement by the Court and shall submit to disbarment upon his

15  consent. The Defendant shall neither seek or accept any public

16  or elected office or position of public trust.

17     We do recommend that the Bureau of Prisons designate

18  Federal Prison Camp in Pensacola, Florida or an alternative

19  facility proximal to Del Ray Beach for place of service of this

20  sentence. We make this recommendation, not for the convenience

21  or pleasure of the Defendant, but because, by placing him in

22  such a facility, it will facilitate his proximity to his family

23  members and their proximity to him.

24     With respect to the Defendant, we also recommend that the

25  Bureau consider the Defendant to participate in the 500-hour

1 residential drug and alcohol program if he qualifies. That's

2 entirely up to the Bureau of Prisons, and if you are qualified

3 and succeed, you may receive credit on your sentence.

4       With respect to your request that the Court recommend that

5 the Bureau of Prisons not place any public safety factor

6 management variable on you, the Court defers such a decision to

7 the Bureau of Prisons. As we noted at the outset, this sentence

8 imposed not only satisfies the guidelines applicable here but

9 also the factors of 3553(a).

10       Finally, I have to advise you of your right to appeal this

11 sentence to the United States Court of Appeals, and if you're

12 unable to pay the costs of an appeal, you may apply for leave

13 to appeal in forma pauperis, and if approved, counsel will be

14 appointed for you and you will not be required to pay any

15 costs. With few exceptions, any Notice of Appeal must be filed

16 within 14 days after this sentence is imposed. To that extent,

17 the Defendant will stand committed.

18       Is there any other motions?

19       MR. HOUSER: Judge, we have an indictment that was filed in

20 this case before the information. The Government would move to

21 dismiss that indictment.

22       THE COURT: It is so Ordered. Thank you.

23       (At this time the proceedings were adjourned.)

24

25

1                    C E R T I F I C A T E

2

3        I, KRISTIN L. YEAGER, Official Court Reporter for the

4  United States District Court for the Middle District of

5  Pennsylvania, appointed pursuant to the provisions of

6  Title 28, United States Code, Section 753, do hereby certify

7  that the foregoing is a true and correct transcript of the

8  within-mentioned proceedings had in the above-mentioned and

9  numbered cause on the date or dates hereinbefore set forth; and

10  I do further certify that the foregoing transcript has

11  been prepared by me or under my supervision.

12

13                        S/Kristin L. Yeager
                          KRISTIN L. YEAGER, RMR,CRR
14                        Official Court Reporter

15
    REPORTED BY:
16
        KRISTIN L. YEAGER, RMR,CRR
17      Official Court Reporter
        United States District Court
18      Middle District of Pennsylvania
        P.O. Box 5
19      Scranton, Pennsylvania  18501

20

21

22          (The foregoing certificate of this transcript
    does not apply to any reproduction of the same by any means
23  unless under the direct control and/or supervision of the
    certifying reporter.)

24

25